FORM 5. Petition for Review/Notice of Appeal of an Order or Decision of an Agency, Board, Commission, Office, Bureau, or the US Court of Federal Claims (vaccine appeals only))

Form 5
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## PETITION FOR REVIEW/NOTICE OF APPEAL

Notice is hereby given that the petitioner(s)/appellant(s) listed below hereby appeal(s) the below-noted case to the United States Court of Appeals for the Federal Circuit.

Originating Tribunal *(Name of Agency, Board, Commission, Office, Bureau, or Court whose decision is being appealed)*:    Merit Systems Protection Board

Case number being appealed:    DC-1221-13-0522-B-2

Case title being appealed:    Redale Benton-Flores v. Department of Defense

Date of final decision or order being appealed:    01/23/2023

Date decision or order was received:    01/23/2023

☒ I have attached a copy of the decision or order being appealed.

**List all Petitioners/Appellants** (List each party filing this appeal. Do not use "et al." or other abbreviations. Attach continuation pages if necessary.)

Redale Benton-Flores

Date: 03/22/2023

Signature: *Alexis T*

Name: Alexis Tsotakos

Address: 8403 Colesville Road, Suite 1000

Silver Spring, MD 20910

Phone Number: 301-608-0880

Email Address: atsotakos-efile@gelawyer.com

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

REDALE BENTON-FLORES,
                    Appellant,

    v.

DEPARTMENT OF DEFENSE,
                    Agency.

DOCKET NUMBER
DC-1221-13-0522-B-2

DATE: January 23, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Alexis Tsotakos</u>, Esquire, and <u>Christopher H. Bonk</u>, Esquire, Silver Spring, Maryland, for the appellant.

<u>Maxwell Selz</u>, APO, AE, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Vice Chairman Harris recused herself and
did not participate in the adjudication of this appeal.

## FINAL ORDER

¶1      The appellant has filed a petition for review of the remand initial decision, which denied her request for corrective action in this individual right of action

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

(IRA) appeal.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

¶2      The appellant filed this IRA appeal, alleging that the agency retaliated against her for protected whistleblowing.  *Benton-Flores v. Department of Defense*, MSPB Docket No. DC-1221-13-0522-W-1, Initial Appeal File (IAF), Tab 1.  The administrative judge dismissed the IRA appeal for lack of jurisdiction.  IAF, Tab 8, Initial Decision.  On review, the Board reversed and remanded for adjudication on the merits.  *Benton-Flores v. Department of Defense*, 121 M.S.P.R. 428 (2014).

¶3      In the Board's Opinion and Order, we found that the appellant exhausted disclosures concerning the following before the Office of Special Counsel (OSC): (1) a teacher's aide was wrongly taken away from the appellant's classroom for training; (2) a speech teacher was not providing services to her students as required by their individualized education program; (3) staff mistreated students; (4) a staff member endangered students by bringing a razor into the classroom; (5) a staff member engaged in abusive and threatening behavior; (6) a staff member performed an illegal search of her students' belongings; and (7) a staff

member spread rumors around the school about the appellant. *Id.*, ¶ 7. Of those, the Board found that the appellant presented nonfrivolous allegations concerning Disclosures 3-5. *Id.*, ¶¶ 8-11. The Board also found that the appellant nonfrivolously alleged that Disclosures 3-5 were a contributing factor in her June 2012 termination, a personnel action which also was properly exhausted with OSC. *Id.*, ¶¶ 12-14.

¶4    On remand, the administrative judge developed the record and planned for a hearing. *Benton-Flores v. Department of Defense*, MSPB Docket No. DC-1221-13-0522-B-1, Remand File (RF), Tab 37. Because of scheduling conflicts with witnesses, the administrative judge dismissed the case without prejudice. RF, Tab 38. After refiling the case, the appellant decided she did not want to pursue the hearing and, instead, requested a decision on the written record. *Benton-Flores v. Department of Defense*, MSPB Docket No. DC-1221-13-0522-B-2, Refiled Remand File (B-2 RF), Tab 18 at 1. The administrative judge then issued a remand initial decision, denying the appellant's request for corrective action. B-2 RF, Tab 27, Remand Initial Decision (RID) at 2. She found that the appellant failed to meet her burden of proving that the disclosures identified by the Board for further adjudication were protected. RID at 6-19. The appellant has filed a petition for review challenging the remand initial decision. *Benton-Flores v. Department of Defense*, MSPB Docket No. DC-1221-13-0522-B-2, Remand Petition for Review (RPFR) File, Tab 3. The agency has filed a response and the appellant has replied. RPFR File, Tabs 5-6.

¶5    To establish a prima facie case of whistleblower reprisal in this case, the appellant had the burden of proving, by preponderant evidence, that: (1) she made a protected disclosure under 5 U.S.C. § 2302(b)(8); and (2) the protected disclosure was a contributing factor in an agency's personnel action. *Benton-Flores*, 121 M.S.P.R. 428, ¶ 5. To establish that she made a protected disclosure under 5 U.S.C. § 2302(b)(8), the appellant need not prove that the matter disclosed actually established one of the categories of wrongdoing listed

under section 2302(b)(8)(A); rather, she must show that the matter disclosed was one which a reasonable person in her position would believe evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8). *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 6 (2015); *Benton-Flores*, 121 M.S.P.R. 428, ¶ 8. The proper test for determining whether an employee had a reasonable belief that her disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced a violation of a law, rule, or regulation, or one of the other conditions set forth in 5 U.S.C. § 2302(b)(8). *Benton-Flores*, 121 M.S.P.R. 428, ¶ 8.

The appellant failed to prove that Disclosure 3 was protected.

¶6    On review, the appellant first argues that the administrative judge improperly dismissed portions of Disclosure 3 because they were conveyed orally, rather than in writing. RPFR File, Tab 3 at 10-11 (referencing RID at 9). We disagree. As will become clear in our discussion below, the argument misrepresents the administrative judge's findings; she did not find any disclosure unprotected because it was oral. The appellant separately reasserts that she reasonably believed Disclosure 3, about staff mistreating students, was protected. RPFR File, Tab 3 at 11-13. She argues that the administrative judge mistakenly interpreted Board precedent in finding otherwise. *Id.* at 12-13 (referencing RID at 8-11; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶¶ 6-7 (2016); *El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 10 n.11 (2015)). Again, we disagree.

¶7    As discussed in both the Board's Opinion and Order and the remand initial decision, Disclosure 3 actually involves several discrete incidents. *Benton-Flores*, 121 M.S.P.R. 428, ¶¶ 7, 9; RID at 8-14; IAF, Tab 5 at 8, 14-15. The first, which we will call Disclosure 3(a), involved a teacher's aide reportedly dragging a student to isolation. IAF, Tab 5 at 14. The second, Disclosure 3(b),

involved a teacher's aide reportedly pushing a student.  *Id.* at 15.  And the third, Disclosure 3(c), involved the restraint of a student.  *Id.* at 8.

¶8      In the Board's Opinion and Order, we observed that while the appellant had not cited a particular law, rule, or regulation implicated by her alleged disclosures, the agency's regulations clearly mandate the safety and security of staff and students in agency-run schools.  *Benton-Flores*, 121 M.S.P.R. 428, ¶ 10. We found that the appellant nonfrivolously alleged that a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions described in Disclosures 3-5 evidenced a violation of law, rule, or regulation.  *Id.*  In reaching that conclusion, we relied on the appellant's OSC complaint and her disclosures described therein. *Id.*, ¶ 8.

### Disclosure 3(a)

¶9      In her OSC complaint, the appellant described Disclosure 3(a), an oral disclosure to her Assistant Principal, as follows:

> That [an aide] did drag my then 3 year old [student] out of [the] center and placed him in "isolation" seated in front of a glass window in the back of the room, with the blinds closed, and the child's back turned away from rest of the classroom.  Isolating a child in this manner was outlawed in the [USA] in public schools back in the 1960's.  The child cried profusely, and I considered this treatment of physically dragging the child out of [the] reading center to be abusive.  (This was witnessed by [another aide], who was reading a story to students at the time, while I prepared the snacks).

IAF, Tab 5 at 14.  By contrast, during the remand proceedings, in lieu of testimony about Disclosure 3(a), the appellant submitted a sworn affidavit in which she provided the following:

> In or about October 2011, I verbally disclosed to [the] Assistant Principal at Aviano Elementary School, that I witnessed [an aide] physically drag a three-year old [particular student] out of the reading center and into isolation away from the other students.  I informed [the Assistant Principal] that [the aide's] actions were improper and dangerous.

B-2 RF, Tab 22 at 108.

¶10      Aside from the two aforementioned statements, the appellant has not directed us to any evidence corroborating Disclosure 3(a) or providing further details about it.[2]  RPFR File, Tab 3 at 6.  However, we did locate a deposition wherein the alleged recipient of this disclosure could not recall the appellant ever disclosing that the aide improperly isolated or pushed any student.  B-2 RF, Tab 4 at 398-99.

¶11      In the remand initial decision, the administrative judge explained that an appellant must identify the regulation or provision that she reasonably believed was violated if it is not clearly implicated by the facts.  RID at 9 (referencing *Salerno*, 123 M.S.P.R. 230, ¶¶ 6-7; *El*, 123 M.S.P.R. 76, ¶ 10 n.11).  She went on to find that "the appellant's statement that she orally disclosed an action she believed to be 'improper and dangerous' fails to establish by preponderant evidence that a disinterested observer would believe she disclosed a violation of agency policy."  RID at 9.  The administrative judge further supported this conclusion by discussing, inter alia, the agency's process for reporting incidents of child abuse and neglect, and noting that the appellant did not follow that process.  RID at 9-10.

---

[2] In her remand initial decision, the administrative judge noted that the appellant submitted a report of investigation from a related equal employment opportunity discrimination complaint totaling over 3,000 pages.  RID at 4 n.1.  The administrative judge explained that, in the absence of specific citations to that evidence, she had not independently examined the report to determine whether anything contained within supported the appellant's burden in this appeal.  *Id.*  For the same reasons, we have considered the evidence the appellant referenced in her petition for review, but we have not otherwise pored through the exhaustive record.  *See Keefer v. Department of Agriculture*, 92 M.S.P.R. 476, ¶ 18 n.2 (2002) (recognizing that an appellant is required to articulate claims with reasonable clarity and precision and that "it is not the Board's obligation to pore through the record . . . or to construe and make sense of allegations that [are] set forth at various parts of an extremely voluminous case file"); 5 C.F.R. § 1201.115(a)(2) (requiring that a petition for review "explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error").

¶12 While a disclosure about child safety certainly could be protected even if an individual did not follow designated reporting procedures, we agree with the administrative judge's conclusion that the appellant failed to prove, by preponderant evidence, that she made Disclosure 3(a) and it was protected. In our Opinion and Order, we found that the appellant presented nonfrivolous allegations of protected disclosures because her allegations implicated agency regulations pertaining to school safety, as well as some associated state statutes or regulations. *Benton-Flores*, 121 M.S.P.R. 428, ¶¶ 8-10. However, even if we fully credited the appellant's affidavit, which appears to be the only additional evidence she provided to support Disclosure 3(a) on remand, it merely alleges that Disclosure 3(a) was one of "improper and dangerous" actions. B-2 RF, Tab 22 at 108. The appellant has not identified any additional evidence to further explain, for example, what led to the aide's actions, whether the child was harmed in any way, whether she feared that the child was harmed in any way, or precisely how she reasonably believed the "improper and dangerous" actions amounted to a violation of law, rule, or regulation. Nor has she identified any evidence that her disclosure included similar details. In other words, while the appellant may have reasonably believed that she was disclosing wrongdoing, she failed to prove that she reasonably believed that she was disclosing wrongdoing that rose to the level of a violation of law, rule, regulation, or other protected category. *See Benton-Flores*, 121 M.S.P.R. 428, ¶ 8; *see also Keefer v. Department of Agriculture*, 82 M.S.P.R. 687, ¶ 11 (1999) (recognizing that, to be protected, a disclosure must be specific and detailed, not a vague allegation of wrongdoing regarding broad or imprecise matters).

*Disclosure 3(b)*

¶13 In her OSC complaint, the appellant described Disclosure 3(b), an oral disclosure to her Assistant Principal, as revealing that an aide "did push and shove [], a student with autism, away, when he ran to her to be comforted." IAF, Tab 5 at 15. According to this OSC complaint, the incident was witnessed by

another aide, who "felt for" the child. *Id.* In her sworn affidavit submitted on remand, the appellant described the incident somewhat differently. B-2 RF, Tab 22 at 108. The appellant asserted that she disclosed seeing the aide "physically push and shove [a particular student in her classroom], who was diagnosed with autism." *Id.* She further asserted that she informed the Assistant Principal that the action was "improper and dangerous." *Id.*

¶14     The administrative judge found the earlier of the two descriptions more reliable. RID at 12. She then concluded that the appellant failed to meet her burden for Disclosure 3(b) for the same reasons she failed to meet her burden for Disclosure 3(a). RID at 12-13. Among other things, she observed that the appellant did not allege that she followed up about this incident or otherwise establish that she reasonably believed that she disclosed something that rose to the level of a violation of law, rule, or regulation. RID at 13. The administrative judge also noted that, despite her earlier indication that another aide witnessed the event, the appellant failed to provide a statement from that individual or anything else for corroboration. *Id.* We further note that the alleged recipient, the Assistant Principal, did not recall any such disclosure. B-2 RF, Tab 4 at 398-99.

¶15     Again, we agree with the administrative judge's conclusion that the appellant failed to meet her burden for Disclosure 3(b). The appellant provided minimal information about both the underlying incident and her alleged disclosure about the same. Without more information, we cannot determine whether the appellant was disclosing actions that were insensitive, but far shy of a child safety issue, or something much worse. Therefore, we find that she has not proven by preponderant evidence that she made Disclosure 3(b) and had a reasonable belief that it revealed wrongdoing that rose to the level of a violation of law, rule, regulation, or other protected category.

*Disclosure 3(c)*

¶16      As with the other disclosures, the Board found that the appellant met her jurisdictional burden for Disclosure 3(c) based on the description she provided in her OSC complaint.   There, the appellant described Disclosure 3(c) as involving an autistic student being physically restrained by an untrained aide.   IAF, Tab 5 at 8.   She further indicated that "[t]hese types of restraints have resulted in . . . the death of children."   *Id.*   Unlike Disclosure 3(a)-(b), which were not documented, Disclosure 3(c) occurred via email, copies of which the appellant provided on remand.   B-2 RF, Tab 8 at 100-01.   The email chain begins with the appellant complaining about an aide's use of her time.   *Id.*   After the Assistant Principal responded, the appellant replied.   *Id.*   Near the end of that reply, which was largely a complaint about scheduling and time management, the appellant stated the following:

> They obviously can't handle [a particular student] when he is having a difficult day, or they wouldn't have had to RESTRAIN the child over there.   To the best of my knowledge, no one in that particular class has had any experience or TRAINING in RESTRAINING A CHILD, let alone one with AUTISM.   This is very dangerous practice to be re[s]training a child without the proper training, and then email the world that this is what was done.   Some children have actually died while being re[s]trained.

*Id.* at 100 (grammar, punctuation, and spelling in original).

¶17      While finding that the appellant failed to prove that Disclosure 3(c) was protected, the administrative judge noted that the appellant failed to specify when the alleged restraint took place or the circumstances under which it occurred. RID at 14.   She further recognized that the appellant did not allege that restraining a student is per se impermissible—the appellant merely speculated about whether the employees were trained to do so.   *Id.*   Finally, the administrative judge observed that the appellant failed to identify any policy concerning the appropriateness of restraining students.   *Id.*

¶18      On review, the appellant reasserts that restraining a child can have fatal consequences. RPFR File, Tab 3 at 14. While that may be true, we agree with the administrative judge's conclusion that the appellant failed to prove, by preponderant evidence, that Disclosure 3(c) was protected. The appellant did not disclose, for example, that an employee had actually restrained a child in a way that harmed or risked harming the child. Nor did she disclose that an employee had restrained a child in a way that was contrary to law, rule, or regulation. Instead, the appellant simply suggested that someone restrained a child, at some time, and may have done so without training. B-2 RF, Tab 8 at 100. Absent more information, the administrative judge correctly found that the appellant failed to prove that she made a protected disclosure.

<u>The appellant failed to prove that Disclosure 4 or 5 was protected.</u>

¶19      As discussed in both the Board's Opinion and Order and the remand initial decision, what the Board characterized as Disclosures 4-5 involved three discrete incidents, each involving the same teacher's aide. *Benton-Flores*, <u>121 M.S.P.R. 428</u>, ¶¶ 7, 9; RID at 8-14; IAF, Tab 5 at 8, 12-13. The first, which we will call Disclosure 4(a), generally involved the aide bringing a razor into a classroom. IAF, Tab 5 at 8. The second, Disclosure 4(b), generally involved the aide pushing a child on a swing.[3] *Id.* The last, Disclosure 5, generally involved the aide yelling, rummaging through drawers, and blocking the appellant. *Id.* at 8, 12-13.

---

[3] In our Opinion and Order, we characterized Disclosure 4 as involving a staff member endangering students by bringing a razor into the classroom and Disclosure 5 as involving threatening behavior toward the appellant. *Benton-Flores*, <u>121 M.S.P.R. 428</u>, ¶ 7. Although the incident involving the aide pushing a child on a swing does not fit within either description, it is an alleged disclosure about endangering students, more closely aligned with Disclosure 4. Accordingly, like the administrative judge, we have grouped it with the disclosure about the razor blade. RID at 17-19. This grouping and labeling is only provided for clarity and consistency; it is of no substantive consequence in this appeal.

*Disclosure 4(a)*

¶20      According to her OSC complaint, in Disclosure 4(a), the appellant reported that her aide was doing things that were unsafe for the school children, including his bringing a razor into the classroom.  IAF, Tab 5 at 8.  To corroborate this, the appellant submitted an email from her to the aide, wherein she stated, "There is a very sharp razor laying on your desk.  This is very dangerous to our kids.  Please remove it or take it home."  PFR File, Tab 10 at 17.  The appellant then forwarded that message to an agency official with a note indicating that she had taken a picture of the razor, in anticipation that the aide might lie about it.  *Id.*  The record also includes corroborating deposition testimony from another agency official, the Principal.  B-2 RF, Tab 4 at 199-200.  The Principal confirmed that the appellant raised the issue of the razor with her, the Principal discussed the matter with the aide, and he explained that he had been using it for a class project but had since removed it.  *Id.*

¶21      The administrative judge found that the appellant failed to prove that she reasonably believed Disclosure 4(a) was protected.  RID at 17.  She found it inherently improbable that the appellant reasonably believed that she was disclosing a threat to students, yet responded merely by taking a picture and emailing the aide, rather than removing the razor herself.  *Id.*  The administrative judge also noted that the appellant failed to cite any specific policy prohibiting the use of razors within school premises.  *Id.*

¶22      On review, the appellant argues that razors are inherently dangerous in a school setting, regardless of whether there was a policy prohibiting them.  RPFR File, Tab 3 at 15-16.  While that may be true, it was the appellant's burden to prove that she reasonably believed she was making a protected disclosure. Absent further explanation or context, we agree with the administrative judge's determination that the appellant did not meet that burden.  Without a policy altogether prohibiting the razor, it was incumbent upon the appellant to prove that she reasonably believed that the disclosure concerning the razor on school

premises nevertheless rose to the level of a violation of law, rule, regulation, or other protected category. She has not done so. The appellant's suggestion that the razor posed an inherent and immediate threat to students appears inconsistent with an admission she referenced on review—the appellant photographed the razor, but left it sitting there for several hours until the aide retrieved it. *See* RPFR File, Tab 3 at 7 (citing B-2 RF, Tab 6 at 57). In fact, the appellant previously presented an altogether different concern than the one she now asserts. In a prior statement about the matter, the appellant showed no concern for the students; rather she explained, "I was very concerned about what he might be thinking. I felt in danger. (I honestly thought someone could come into this room and find my bloody body under a desk)." B-2 RF, Tab 6 at 57.

### Disclosure 4(b)

¶23    Disclosure 4(b) consists of an email from the appellant to administrators in which she asserted that her aide "started pushing this little boy on the swing—and something I felt was way too high. If the child accidently flew-off, he would have surely have gone through one of the classroom windows." PFR File, Tab 10 at 23. According to her email, the appellant informed the aide that he was frightening her, but he ignored the appellant's concerns and continued to swing the child high in the air. *Id.* The appellant suggested that another teacher had expressed similar concerns. *Id.*

¶24    Like the other alleged disclosures, the administrative judge found that the appellant failed to meet her burden for Disclosure 4(b). RID at 18. She explained that while the appellant previously had presented nonfrivolous allegations, the appellant did not present further specificity on remand to prove that she reasonably believed this to be a protected disclosure. *Id.* The administrative judge also noted that the appellant failed to include any evidence corroborating the assertion that another teacher had witnessed the aide's swinging a child. *Id.*

¶25     On review, the appellant has referenced this disclosure, generally, but she has not presented any particularized argument about it.  RPFR File, Tab 3 at 17.  The appellant simply asserts that Disclosures 4(a)-(b) "focus on the potential or risk of serious bodily harm."  *Id.*  However, like the other allegations, we are unable to discern the gravity of Disclosure 4(b) with the limited context provided; the record is unclear whether the appellant was discussing someone not meeting her expectations or, more seriously, discussing what she reasonably perceived to be a violation of law, rule, regulation, or other category of protected disclosure.

*Disclosure 5*

¶26     In the final disclosure that we previously recognized as within our jurisdiction, Disclosure 5, the appellant sent an email to administrators, characterizing her aide as "abusive."  PFR File, Tab 10 at 14.  The details within this email more specifically describe an incident in which the appellant asked him for copies of an individualized education plan and he responded with a tirade that invaded her privacy, embarrassed her, and left her feeling helpless.  *Id.*

¶27     The administrative judge found that the appellant failed to prove that she reasonably believed this to be a protected disclosure.  RID at 15-16.  While the appellant argued that she reasonably believed that she was disclosing threatening and dangerous behavior, the administrative judge found the argument undermined by the fact that the appellant waited nearly a month to report the incident.  *Id.*  The administrative judge also found the appellant's description of the aide's conduct notably less serious than disclosures of threats that the Board has found protected in other cases.  RID at 16 (citing *Baldwin v. Department of Veterans Affairs*, [113 M.S.P.R. 469](), ¶¶ 16, 18 (2010)).

¶28     On review, the appellant emphasizes that the aide pushed past her, arguing that the administrative judge failed to properly consider that portion of her disclosure.  RPFR File, Tab 3 at 15.  The appellant's email to administrators did include an allegation that the aide "bursted into [her] office, pushing pass [her]."  PFR File, Tab 10 at 14 (spelling and grammar in original).  It also includes an

allegation that the appellant "tried to block [her] desk with [her] body, but [the aide] was reaching [past] [her] anyhow." *Id.* However, while the appellant would have us find this comparable to a disclosure concerning threats of violence, we are not persuaded. It is evident that the appellant did not approve of her aide, for a number of reasons. But the appellant has not proven, by preponderant evidence, that her disclosures about him were protected.

¶29    In sum, we agree with the administrative judge's conclusion that, although the appellant satisfied her jurisdictional burden by presenting nonfrivolous allegations, she failed to then present additional arguments and evidence satisfying her higher burden of proof on the merits. Therefore, we conclude that the administrative judge properly denied the appellant's request for corrective action.[4]

### NOTICE OF APPEAL RIGHTS[5]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

---

[4] We have reviewed the relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3)** **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[6]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                            /s/ for
                                  _____
                                  Jennifer Everling
                                  Acting Clerk of the Board
Washington, D.C.